Good morning, Your Honors. Assistant Federal Defender Daniel Broderick on behalf of Dr. McNeely, petitioner. Good morning. The respondent has conceded in the brief that there is presumptive prejudice. Under Doggett, Supreme Court opinion in Doggett, what that means is that the respondent must now rebut the presumptive prejudice persuasively. By the way, what's the current status of the state court case? It's still pending. He still hasn't had a trial. So he's still in pretrial detention? Yes. What is it, five years now? I'm sorry? Five years now? It's been five years, yes. Five years of pretrial? Well, five years, I think, in April. Has he been a? He's, I think, and I apologize, Your Honor, I tried to contact his current trial counsel. He's been out sick. But from the last I heard of him, what I heard from his secretary is that he's back in Atascadero because he was sitting in Sacramento County Jail. Has there been a preliminary hearing? No, never been a preliminary hearing. And is he in a competent status right now or has he been deemed incompetent at this point? I apologize, Your Honor, I just don't know the latest. When I last talked in December, he had made a request to be removed back to Atascadero because the facility was easier for him than staying in Sacramento County Jail. And I don't know the status of that. I don't know the answer to your question, Your Honor. I apologize. Atascadero is a psychiatric facility. Well, that's where he was before. That's where he was before. And that's where we knew the people there. Well, it doesn't indicate there's some – well, obviously, there are mental problems. There are mental problems, right? Yes, but I don't think there's anything happening at Atascadero right now. He's not there, as far as I understand it, to return him to competence. Well, is there a current finding of competency? Or you're not sure of that? I don't know, Your Honor. All right. I just don't think I know that. Go ahead. Can I ask you just one more question, real quick? If you were convicted of the crime – now, is there an indictment or an information or a complaint? Information. If you were convicted of the crime charged in the information, what would be the maximum sentence? Well, it would all depend. It's a second strike case? Yes. It's a second strike case in a sex offense case in which frequently all of the counts are run consecutively with an additional strike. So I'm just hazarding a guess that it's well in excess of 50 years would be my guess. But in his particular case, this is the difficulty with Respondent's position, is that they have to address the factors in his case. And that's why we highlighted – it's actually at page 55 of the excerpt of record – is his actual information. And this is not an information in which it says on one specific date, one specific act happened. It's a four-and-a-half-month period five years ago. And even the last two charges, the failure to register charges, are not just failure to register. They're failure to register within five days. Failure to register within five days. So they have to show that he can remember exactly what he was doing every day of a four-and-a-half-month period four-and-a-half years ago, five years ago. But you're arguing now – you're arguing prejudice, right? I'm arguing prejudice. And he has indicated under oath in his petition – it's at ER-7 – that his memory has been impaired. That his memory, due to the taking of psychotropic drugs, has now been impaired with respect to the events at issue in the information. So we believe that the Respondent has utterly failed or even attempted to assume the mantle of rebutting persuasively the prejudice. Now, another issue in this case that we didn't raise directly in the brief, but Respondent argues that he repeatedly waived time and that he was repeatedly found incompetent. You can't have it both ways. Any waiver of time by Mr. McNeely has to be knowing and intelligently made. So to say that Mr. McNeely – which they haven't proved with any transcripts – that Mr. McNeely knowingly and intelligently waived time, at the same time they're saying, well, he was necessarily incompetent. Now, how many lawyers has he had during this period of time? At the time I think of his habeas being filed, I think it was four. He's now had the same lawyer – so I think he's at five. He's had the same lawyer he's had for the last – since the time of his habeas to now. It's a deputy public defender. And, Your Honor, with respect to that, I just want to address one thing. It is exceptionally rare. It is exceptionally rare for a defense attorney to say, I think my lawyer's incompetent, even when psychologists say he's not. Your client, yeah. My client is incompetent. And he has nothing – there's nothing in the record to support that, except the clock was ticking. Except what? Except the clock was ticking. It was getting awfully close to when he had to put on some case. And there was nothing in there to indicate that. What about the prosecution's motion to dismiss? And then I guess under California law, the prosecution – if you're running up against this delay, the prosecutor can dismiss the case and then refile the same case and it starts the clock all over again? That's my understanding. It starts the statutory clock all over again. Statutory clock. It doesn't start the constitutional clock. The difficulty, as we highlighted – well, one of the difficulties, even though it's not an actual claim here, the difficulty is that when they do that, he's supposed to be released. Yeah. He wasn't released. They dismissed it, refiled it the next day, and he stayed in custody the whole time. He was held overnight until a new filing was made. But, of course, as you say, that's not before us. They didn't follow the law in that respect. This is – and I'll actually try to save some time for rebuttal. This is not a garden variety competency case. This is not a case of someone seeing little green men. This is not a case of someone babbling incoherently. This is a case, as the magistrate judge found, where he just disagreed with his lawyers. And not surprisingly, he disagreed with the lawyers who thought he was incompetent. Well, speaking of disagreeing with the lawyers, I mean, you do agree that at least a substantial portion of the delay is attributable to him or him, meaning the Petitioner here, or to his competency problem. Correct. And that's why what I tried to do in my opening brief was put an asterisk beside those time periods that are not attributable to what Your Honor just said. And that – I totaled those days to be over 367 days. Well, of course. That are simply not attributable to him at all. Part of the problem, you know, is this is one of the worst State court records I've seen. I mean, you almost can't tell what the gibberish means. It's very difficult. Well, and I should indicate one thing in that regard, Your Honor, and then I'll save the rest of my time for rebuttal. On page 88 of the excerpt of the record is the magistrate judge's findings and recommendations. And the footnote of that says that on October 16th, the year 2000, the Respondent was ordered by the magistrate judge to submit any and all transcripts relevant to a determination of the issues in the petition. So if there's any concern about the record being incomplete, it all relies on Respondent's feet. And I'd like to reserve the rest of my time. All right.  Thank you, Mr. Broderick. Good morning, Your Honors. Craig Myers for Respondent. The district court in this case correctly found that no speedy trial violation occurred applying the four-part test of Barker v. Wingo. Before I get into my argument, I would like to address what my belief is for the status of this case. I'm going to make that final. It's almost impossible to understand this, you know, the record, what all these little notations mean and who's responsible for what. This is it's your obligation under the Habeas rules to bring up a record, right? That's correct, Your Honor. And you didn't do that. Well, I would submit that I did. The minute or whatever you did the best you could. But it's not much of a right. Why didn't you order transcripts? Some transcripts were ordered. Why didn't you order them all? That's your obligation, isn't it? It is my obligation. You know, it's hard to understand what's going on here without those because you get these, you know, these cryptic so-called minutes or wherever they are. And who knows what happened? I mean, you know, in that situation, I think you have the obligation to order a transcript, which you did not do. That's correct, Your Honor. Nor did you respond to the petitioner's request for transcripts. Why didn't you do that? Well, some transcripts were sought and some were requested. However, the district court did not have any trouble finding that the minute orders reflecting the PT-1060, which is personal time waiver, 10 and 60 days, was adequate and sufficient. And those findings now are on a clear error standard. Right. And Respondent submits that all the minute orders do reflect. But it's a matter of law that it's your burden of proving what these things mean. That's correct. And we reviewed that de novo. Excuse me? We reviewed that de novo. It's a legal question whether you met your burden. That's correct. But the district court, in finding that the record was sufficient, is reviewed on clear error. And in responding to the reply brief, appellant claims that there's on Excerpt of Record 43 on 828 of 98, it indicates that there's a PTW, personal time waiver, 10-60. He claims that the transcript, which is in the file, in the Excerpt of Record, at page 66 through 67, does not jive. That's completely incorrect. Turning to the next. You also make the argument that the SC notations mean that that was at McNeely's request to pursue plea negotiations. And you say that's a time extension or delay that he's responsible for. But I don't see how you can extrapolate that, because normally SC means status conference. It means status conference. And we did put in a footnote that that was conjecture on our part of how trials are normally done in Sacramento, that it was put over for status conference for plea negotiations. Right. Well, so how does that go toward meeting your burden? Meeting my burden in what respect? The conjecture that the status conference was a notation that meant it was being put over for plea conferences, not just plea agreement conferences, in which the Court doesn't participate anyway. It's the – it's our position that the minute order is indicating that it was put over for SC, which stands for status conference. And the district court found that to be that the notation was correct and the record was adequate in that respect. If I can get back to the alleged inconsistency that Petitioner is claiming, on Excerpt 667, which there is a transcript. He's claiming that somehow he did not – excuse me, he did not waive time. But a reading is clearly the Court does indicate that his attorney had requested a date to be set for October 2nd, and the judge said, we're going to set a prelim at that date. He says, time waived, Mr. McNeely, until then. I'm in agreement, Your Honor. The Court goes on to say, all right. You understand you have been entitled to a prelim within 10 days of entry of plea or 60 days of that date. Mr. McNeely says, thank you very much, Your Honor. And the Court says, thank you. That's a clear indication of the transcript that a 10-60-day time waiver was personally listed, knowingly from defendant, and that it's reflected on the minute order. To respond to counsel's argument that sometimes he was confident, sometimes he was incompetent, so how can you make a knowing time waiver? There was various points when he was found to be confident. There were other times when he was found by his lawyers or indicated by his lawyers that he was incompetent. And that's actually the bulk of the delay, is the competency proceedings. And he was found to be incompetent several times and spent years in a Tuscadero. I'd also like to note that the filing of this case here has attributed greatly to the delay. How is that? The last indication that we have is on Excerpts of Record 33 that a jury trial was set on McNeely's competency for February 14, 2001. It's currently pending. That's when this case took effect, and we've been briefing this case, getting the decision of the magistrate judge, district court, and then in front of this court now. But I still don't understand how filing this petition contributes to the delay in the state trial court. They suspended proceedings. Why? Apparently. Who's they? Pardon me? Who's they? State court judge. It was a request of the DA. I mean, why? I believe it was the state court which suspended proceedings because the competency proceedings were set for jury trial. But why? What's the reason that was given? That I'm not certain of. Well, then how can you attribute it to the filing of the habeas petition? I don't see a connection, frankly. Okay. There's also several delays that were attributed to defendant in disqualifying the trial judge three times when it was currently set to head to jury trial. How much of the five years in the state's view is not attributable either to actions by the defendant petitioner or attributable to problems involving his competency? The problems attributed to his competency come out to approximately two years. The petitioner claims that when the case was refiled on August 11th. Well, finish answering my question. So you get two years to competency and how much of the rest of the? Then we have several times where there's been personal time waivers taken by petitioner was approximately seven months. There was also six margin motions, five attorneys. Each time an attorney came in, he needed time to prepare. And while there was that time could be attributed. How much is that? How much is that total? The. Or don't you know? No, it's listed in my brief. I believe when I calculate that point out, that time for the attorneys to come and prepare was approximately one year. And honestly, and honestly, it's hard to determine because an attorney comes in, there's time waivers, they're seeking more time, there's continuance, there's waiving of the prelim. What's your argument on prejudice, assuming we reach that issue? According to, by the way, right, according to Mr. Broderick, that's really the only issue we have to decide. On the issue of prejudice, Respondent's position is that none has been shown by petitioner. In fact, the prejudice is more likely to the people. This is a child molest case. And getting back to petitioner's argument that there's very scant information in the information itself, it's a child molest case. It took place on a child under 14. In all likelihood, she's going to be more reluctant or less willing or unable to testify in this case. Do you really know that? You don't even know which way. When was the last time you contacted the victim in this case? I have never contacted the victim in this case. When was the last time the trial counsel contacted the victim in this case? I don't know that. It seems to me that, well, if you go, okay, when was the habeas filed? This habeas was filed on June 21st of 2000, 26 months after the original complaint was filed. And so a year and a half ago. That's correct. Almost two years, right? And nothing's happened, and this man's still in pretrial detention? Well, there was activity going on from when the habeas was filed, because the last date that we have in the record was that a jury on his competence proceeding was set for February 14th, 2001, and that had been after the case had been set for trial and Mr. McNeely had disqualified three trial judges. What's your understanding of the current status of the case in the State court? The current status is that it's pending, just pending on his competency. Is there a ruling by the State court postponing it while we decide this case? Not that I'm aware of. So it's just out there in a kind of State limbo. Actually, yes, it is. It's out there in limbo and, in my view, would be pending the outcome of this case. Could I ask you about the footnote on page 88, the excerpt that was referred to by counsel for the position? That describes the orders and the transcripts you were provided. Are you in a position to provide any more transcripts than you did under those orders? Currently, no, I'm not. I'm not in a position. I mean, I'll tell you frankly, one possible solution would be to remand this to the district court to get more information, but if you can't provide any more information, there's no point in doing that. I'm not saying that I can't provide them. I'm not in a position to provide them now, and if I were to, I will. But you did try to comply with the magistrate's orders. How are you going to have more than you came up with then? I was not the attorney at that time in this case. I don't know exactly what efforts were taken. May we assume that the estate did its best to comply? Yes, I would assume so. I know the Deputy Attorney did. That's why the idea of remanding seems sort of futile. Well, I think you have to answer this question carefully. Now, you think a remand to, you know, obtain a fuller picture of the state court proceedings, more state court records would be futile? No, I do not. I believe that if this court and if the district court needs to receive all the transcripts, I will endeavor my best to get them. And then if I can't, we can proceed on the current record. What you're saying, well, first of all, you're saying you're not the attorney who responded to that footnote, right? That's correct. Number two, maybe you have no more records in your file cabinet in your office, but you're not certain what you might get by contacting the state, either the state trial court or the DA, right? That's correct. All right. I'm not certain of what records I can get. Well, but the burden on you was dissatisfying to show that you weren't responsible. And if the state failed to do that, why do we give you another chance? Well, our position has been that the record does indicate that there was personal time waivers, that there was competency proceedings. Well, I think we all thought there were gaps that are inexplicable. There's several. Up to the point when the last state court proceeding on February 14th, there are a few gaps, but there are, you know, five, ten days here and there. Those things add up. They do. But at each point, then the next court time, there's a personal time waiver, there's a margin motion, there's a disqualification of a trial judge, there's a new attorney, and the proceedings start over again. Well, let's take the big gap now that this whole proceeding has been held up. If there wasn't any order, can we say that it was the fault of the petitioner, that he brought a habeas case and thereby brought the state to drop the ball? No. I mean, if the state didn't get an order delaying it for some good reason, you've wasted a couple of years in trying to. Unfortunately, I'm not in a position to answer that question because. Why don't you try to devise an answer? Of why the last court date of the 14th until currently what's been happening? Yes. I can't answer. It's always been my understanding that the state court has suspended proceedings pending the outcome of this case. To me, that's quite perverse, you know. But I understand you're not responsible. All right. So you're well over your time. I think we understand your position. We appreciate your argument. But I'll just say, you know, this is one of the I mean, it's just, you know, to think that in the state of California, a person is in pre-trial detention for five years is, you know, it's something nobody wants to believe. Is it? Is it common? No, it's not common. But this is not the common defendant. This is not the common case. So I am out of time. So thank you very much. Thank you. Thank you. All right. Mr. Bartlett. Just a few brief points in no particular order, Your Honors. Counsel indicated that some of the delay was to get new counsel up to speed. In fact, the supplemental excerpt of record, counsel identified it as section 58-122, page 10. And there's actually a declaration from one of those counsel that indicates the entire record relating to these charges in discovery is 50 pages, 50 to 60 pages. That's it. That's all it is. So we're not talking about mountains of discovery. Are you aware of any order regarding dependency of the habeas petition? An order from the Federal court to me? State court. I'm not, Your Honor, but that doesn't mean it isn't there. I'm just not aware of any. I have talked to his counsel, his defense counsel. And he didn't indicate to me in my two or three conversations before that there was anything that was holding it up. There's also, with respect to Your Honor's concerns, and I agree that there is always the possibility of a remand. I would strongly object, one, to the fact where I already indicated that they got their not only got their bite of the apple, they were specifically instructed to take that bite of the apple. And it's just under the facts of Mr. McNeely's case, not only do I think it's unfair to him, but what we're looking at is, at best, if we had an order, Respondents would have to go to State court. They'd have to say we need transcripts prepared for 50 hearings. They're going to have a request for that continuance. They're going to have any, and we're back here three years later, and he's still in jail. The last thing is simply with respect to clear error or the judge's findings. The district court judge in this case made it absolutely clear in his findings that he was simply adopting the facts as alleged by Respondent. There really was no factual finding. He says in his order specifically, I am adopting the facts as alleged by them. And right off the bat, what he said was, what Respondent said was there were all these continuance for plea negotiation conferences, and there's nothing in the record to support that. So on that, I'll submit it. Thank you, Your Honor. All right. Thank you, Mr. Breyer. Thank you, Mr. Myers. This case is submitted for decision.
judges: Noonan, Tashima, Wardlaw